## Murphy *v.* Prudential Insurance Company of America, Appellant.

*Insurance—Life insurance—Answers as to health—Evidence.*

In an action on a policy of life insurance, where the defense is that the insured made false answers to the questions put to him by the medical examiner as to his health, a physician called for the plaintiff cannot be asked on cross-examination whether a certain treatment of the disease of which the insured died was a proper treatment; nor can he be asked whether if he had been told by the applicant that shortly prior to the application, the applicant had consulted another physician for a cough and for night sweats, that fact would have had any effect with regard to passing the applicant as a first-class risk.

Where an insured is alleged to have made false answers as to his health, and the insurance company in an action upon the policy has shown that the insured had consumption and was treated for it within the year preceding the application, it may show that the deceased had consumption within the year after the date of the policy, and died from consumption shortly after the expiration of that year.

*Insurance—Life insurance—Warranty—Act of June* 23, 1885, *P. L.* 134.
Where an insured warrants the truth of the statements made in his application, and he sets forth in his application that he never had any spitting of blood or any serious illness, and the evidence offered by the insurance company in an action on the policy, tends to show that the insured had consumption during the year prior to the date of the policy, and died of that disease thereafter, it is the duty of the trial judge to instruct the jury that the statements contained in the application and alleged by the defendant to be false were material to the risk, and that if they were found to be false or untrue, would avoid the policy.

Argued Jan. 13, 1903. Appeal, No. 156, Jan. T., 1902, by defendant, from judgment of C. P. No. 5, Phila. Co., March T.,

1901, No. 2140, on verdict for plaintiff in case of Mary E. Murphy v. Prudential Insurance Company of America. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit upon a policy of life insurance.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,103.60. Defendant appealed.

*Errors assigned* are indicated in the opinion of the Supreme Court.

*Frederick J. Shoyer*, for appellant.—There is direct authority that a medical witness may be asked any relevant question concerning the nature of a disease or the nature of its treatment: Mertz v. Detweiler, 8 W. & S. 376; Mutual Reserve Fund Life Assn. v. Opp, 30 Southern Repr. 69; Baldi v. Metropolitan Life Ins. Co., 18 Pa. Superior Ct. 599; Edington v. Ætna Life Ins. Co., 77 N. Y. 564; Miller v. Mut. Ben. Life Ins. Co., 31 Iowa, 216.

Expert testimony as to the materiality of false statements as to health made to a medical examiner is admissible: Hartman v. Keystone Ins. Co., 21 Pa. 466; Meyers v. Woodmen of the World, 193 Pa. 470.

A declaration made by the insured prior to the insurance when speaking of an existing disease, has always been considered admissible in evidence: Welch v. Union Cent. Life Ins. Co., 108 Iowa, 224 (78 N. W. Repr. 853); Aloe v. Mut. Reserve Life Assn., 147 Mo. 561 (49 S. W. Repr. 553); Metzradt v. Modern Brotherhood, 112 Iowa, 522 (84 N. W. Repr. 498); Singleton v. St. Louis Mut. Ins. Co., 66 Mo. 63, 76; Asbury Life Ins. Co. v. Warren, 66 Me. 523; Mut. Benefit Life Co. v. Robertson, 59 Ill. 123.

Whether the presence of a certain disease at the time of the death of the insured implies its presence at the issuance of the policy is for the jury to find on the facts: Biddle on Insurance sec. 853; Continental Life Ins. Co. v. Young, 113 Ind. 159 (15 N. E. Repr. 220); Murphy v. Mut. Ben. Life Ins. Co., 6 La. Ann. 518; Tobin v. Modern Woodmen, 126 Mich. 161

(85 N. W. Repr. 472) ; Ronald v. Mut. Reserve Fund Life Assn., 7 N. Y. Supp. 152; Miller v. Mut. Benefit Life Ins. Co., 31 Iowa, 216.

As a matter of law and logic, since the condition of health of the insured at the time of his death is relevant and admissible to show his condition at the time of making his application, the condition of his health between times is also competent evidence of his health at the date of insurance : Quirk v. Metropolitan Life Ins. Co., 12 Pa. Superior Ct. 250 ; Aicher v. Metropolitan Life Ins. Co., 6 W. N. C. 332; Wolfe v. Supreme Lodge K. & L. of Honor, 160 Mo. 675 (61 S. W. Repr. 637) ; Cobb v. Metropolitan Life Ins. Co., 19 Pa. Superior Ct. 228.

There can be no doubt that chronic cough, spitting of blood and lung trouble are serious diseases : Cummings v. Kennebec Mut. Life Ins. Co., 89 Me. 37 (35 Atl. Repr. 1032).

The questions in relation to the spitting of blood, soundness of health, previous serious illness and prior medical attendance are all material questions, not affected by the act of 1885, so as to require a knowledge by the insured of their falsity : Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314; Arnold v. Metropolitan Life Ins. Co., 20 Pa. Superior Ct. 61 ; Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527 ; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Wall v. Royal Society of Good Fellows, 179 Pa. 355; Rider v. Maul, 70 Pa. 15 ; Gorstz v. Pinske, 82 Minn. 456 (85 N. W. Repr. 215) ; Davis v. Moore, 56 S. W. Repr. 991; Kleintobb v. Trescott, 4 Watts, 301.

*Thomas A. Fahy,* with him *Walter Thomas Fahy,* for appellee. —The mere personal opinion of the examining physician in noway affects the warranty, and is therefore irrelevant; and under no circumstances are personal opinions relevant : Penn. Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. Repr. 413 ; Cotheal v. Jefferson Ins. Co., 7 Wendell (N. Y.), 72 ; Lyman v. State Mut. Fire Ins. Co., 96 Mass. 329 ; Rawls v. American Mut. Life Ins. Co., 27 N. Y. 282.

Treatment subsequent to the date of the policy is immaterial : Carson v. Metropolitan Life Ins. Co., 1 Pa. Superior Ct. 572 ; Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17.

The question " Are you in good health ? " was such that it necessitated telling the jury that it was not every illness or

indisposition that would avoid the policy, and it was proper for the trial judge to explain what adjudicated cases had held the question to mean: Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618 ; Dietz v. Metropolitan Life Ins. Co., 168 Pa. 504.

OPINION BY MR. JUSTICE MESTREZAT, May 4, 1903 :

This is an action of assumpsit on an insurance policy, issued by the defendant company on the life of Edward Joseph Murphy, the husband of the plaintiff, who was named as the beneficiary. The application was signed by the insured on November 18, 1899, the medical examination was made the next day, and the policy was issued November 24, 1899. The death proofs state that Murphy died April 5, 1901, of pyelonephritis. The application contains the following questions and answers : " 16. Are you in good health? Yes. 17. When were you last attended by a physician? Four years ago. For what complaint? Neuralgia of the face due to a bruise. 23. Have you ever had (answer yes or no to each) . . . . spitting of blood? No. 24. Have you ever had any serious illness ? No." The defense to the action is that the answers to these questions were not true, and were known to be untrue by the applicant, Edward Joseph Murphy, when they were made. It is claimed by the defendant company that at the time the insured signed the application, he was not in good health, had consulted physicians for hemorrhages and spitting of blood, and died subsequently, on April 5, 1901, of consumption. The application contains, inter alia, the following language : " I hereby declare and warrant that all the statements and answers to the above questions, as well as those made or to be made to the company's medical examiner, are or shall be complete and true, and that they together with this declaration, shall form the basis, and become a part of the contract of insurance hereby applied for. And it is agreed that if any of the said answers be incorrect in whole or in part, then the policy which may be granted in pursuance hereof shall be null and void, and all payments made thereon shall be forfeited to the company. And it is further agreed that the policy herein applied for shall be accepted subject to the conditions and agreements therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company, and the first

premium paid thereon in full, while my health is in the same condition as described in this application." In the application, under the questions to be answered by the insured and which were answered by him before the medical examiner of the company, is the following : " I hereby warrant that the answers to these questions are true, and agree that they shall form a part of the contract of insurance applied for."

The case was submitted to the jury by the learned trial judge to determine the truth or falsity of the answers to the questions in the application, with instructions that under the act of 1885, answers which are in fact incorrect and untrue would not avoid the policy if they were immaterial to the risk, provided they were made in good faith by the insured and in the belief that they were true. The verdict and judgment were for the plaintiff, and the defendant company has appealed.

The first assignment complains that the court erred in refusing to permit the defendant, on cross-examination, to ask Dr. Clark, a witness for plaintiff, the following question : " Would you say that was not a proper treatment for tuberculosis ? " The treatment referred to was alleged to have been administered by Dr. Atlee prior to the date of the application. The question was properly excluded. The treatment of the disease was not in issue, and, therefore, the question was irrelevant. An affirmative reply to the question would have tended to show that the treatment administered by Dr. Atlee was, in the opinion of the witness, proper for tuberculosis, but it would not have aided the jury in determining whether the patient was suffering with that disease, which was the question at issue.

The second, third and fourth assignments allege error by the court in excluding the answers to questions, on cross-examination, put by the defendant to Dr. Clark, the physician who had examined the insured for the risk, to ascertain whether if the witness had been told by the applicant that shortly prior to the application he had consulted Dr. Atlee for a cough and for night sweats, that fact would have had any effect with regard to passing him as a first-class risk. The only effect of the reply to this question would have been to show the opinion of the witness as to whether, in view of the alleged undisclosed facts, the risk was first class, and whether if the alleged fact

had been known, the risk would have been accepted by the
company.  The issue to be determined by the jury, however,
was the truth or falsity of the answers of the insured to the
questions put to him by the medical examiner; and, as affect-
ing that issue, it is apparent that it was wholly immaterial and
of no consequence what, under other facts than those disclosed
by the application, the witness thought about the character of
the risk, whether it was good or bad, and whether the company
would or would not have accepted it.  The testimony was,
therefore, properly excluded.  This question has been ruled in
other states, and a like conclusion reached.  In Rawls v. Amer-
ican Mutual Life Insurance Co., 84 Am. Dec. (N. Y.) 280, a
physician was asked on cross-examination if he had known the
insured had been addicted to certain practices, would he have
regarded his conduct as likely to impair his health; and then
the medical examiner was asked on cross-examination: " If
you had known at the time you had made this examination
(referring to the examination made for the defendants), that
Fisher was in the habit of using intoxicating liquors to excess,
would you have regarded his life healthy and the risk good ? "
The court held that the testimony was properly rejected and
observed: " This testimony was incompetent both on principle
and authority.  It was of no consequence what, in the opinion
of these physicians in certain cases, and under a certain state
of facts, would be a good or bad risk for a life insurance com-
pany to take, or what circumstances should be considered on
the question of increasing or lessening the rates of insurance.
These witnesses might give their opinion on matters of science
connected with their profession, but were not receivable to state
their views on the manner in which others would be influenced
if certain specific facts existed."  This decision was followed
in New York, in Higbie v. Guardian Mutual Life Insurance
Co., 53 N. Y. 603.  There the medical examiner, called as a
witness for defendant, was asked in substance whether if he
had been advised of certain alleged undisclosed facts it would
have called upon him to make further inquiries, and as to the
effect such knowledge would have had upon his answer to the
question as to the propriety of taking the risk.  It was held
that these questions were properly rejected.  In Illinois, a
similar view is taken of the admissibility of such testimony.

In Mutual Aid Association v. Hall, 118 Ill. 169, the medical examiner of the company was the witness being interrogated. The court approved the ruling of the trial court in sustaining the objection to the testimony and said: " They (questions) were, in substance, whether Hall's application for membership in the association would have been favorably passed upon, if it had been stated in such application that he drank liquor. We think that the objections to these questions were properly sustained. The real issue was whether the statements made in the application were true or false. What would have been the effect if some different statement from that therein contained had been made to the association was of no consequence."

The fifth assignment may be dismissed with the remark that a responsive answer to the question put to the witness would not, in itself, have tended to disclose any existing disease, which, as stated by counsel on argument, was the purpose of the question.

The sixth to the twelfth assignments inclusive and the twenty-second assignment may be considered together. The defense to this action in the court below was, as we have seen, that the insured made false answers to the questions put to him by the medical examiner. For the purpose of establishing this fact, the defendant offered to show that the insured was afflicted with consumption during the latter half of the year 1900, and that he died of that disease in the spring of 1901. The trial court held that the evidence was not admissible; that " to ascertain whether he had consumption at the time (of the issuance of the policy), to prove that he had consumption in September, 1900, would not be any evidence in this case." The learned judge, therefore, excluded the testimony offered by the defendant to show the condition of the insured's health in 1900, and that he subsequently died of consumption ; and these assignments under consideration raise the question of the correctness of this ruling. We think the evidence should have been admitted. The defendant had introduced testimony tending to show that during the year 1899, immediately prior to the date of the policy, the insured was afflicted with consumption, and during that time was treated for that disease. It would have been evidence confirmative of this testimony to show that the insured was suffering with, and being treated

for, consumption from a date a few months after the policy was issued till he died with the disease in the spring of 1901. The well understood character of this disease, as being usually slow and lingering, should not be overlooked in determining the relevancy of the excluded evidence. It is doubtless true, we think, that the insured could have been first attacked by the disease subsequent to the date of the policy, and under the evidence the jury could have so found. On the other hand, if the testimony convinced the jury that during the greater part of the year 1900 the insured was afflicted with consumption, and that he died with that disease in the spring of 1901, there would have been evidence, taken in connection with like testimony as to the condition of the insured previous to the issuance of the policy, to justify the jury in finding that he had the disease at the date he made his answers to the questions of the defendant's medical examiner in November, 1899. Whether the disease, if shown to have been present in the insured in 1900, existed at any prior date would have to be determined from the progress it had then made, and from the facts disclosed by expert medical testimony. This evidence should go to the jury with the testimony showing the alleged similar physical condition of the insured in 1899 as bearing upon his condition at the time of the issuance of the policy, and hence, upon the truth or falsity of the statements in his application. The weight of the testimony and the credibility of the witnesses were, as in other cases, for the jury. We are, therefore, of opinion that the trial court was in error in rejecting the testimony offered by the defendant tending to show that the insured was suffering with consumption in 1900 and died of that disease in the spring of 1901.

The numerous remaining assignments of error may be considered without special reference being made to them separately. The correctness of the questions raised by these assignments requires an interpretation of the Act of June 23, 1885, Purd. Dig. 1046, and its application to the case in hand. The first section of the act is as follows: " Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant, shall effect a forfeiture or be a ground of de-

fense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk."

Hartman v. Keystone Insurance Co., 21 Pa. 466, was an action on a life insurance policy in which it was stipulated, that any untrue or fraudulent allegations, in effecting the insurance should avoid the policy, and that the statements of the assured should form the basis of the contract. Chief Justice BLACK, delivering the opinion, says: " The plaintiff can only recover if the declaration of the assured, upon the faith of which the risk was taken, was strictly true in every material part. It will not do to say that this was immaterial. Every fact is material which increases the risk, or which, if disclosed, would have been a fair reason for demanding a higher premium. Nor is it of any consequence that the death was not, in fact, produced by a cause connected with the subject of the misrepresentation. One who falsely declares himself free from consumption cannot effect a valid insurance on his own life, though he died of cholera. A soldier or sailor who warrants himself a merchant, has a void policy, even though he is not slain in battle, or does not perish at sea." In Wall v. Royal Society, 179 Pa. 355, it is said, GREEN, J.: " The general doctrine that in actions on policies of insurance with a warranty of the truth of the facts, the validity of the contract depends on the truth of the warranty, and that the engagement of the policy holder is absolute that the facts shall be as they are stated when his rights under the policy attach, is so very familiar and has been so frequently declared, that a mere reference to a few of our modern decisions will suffice."

The act of 1885 has frequently been before this court for construction. In the recent case of Lutz v. Metropolitan Life Insurance Co., 186 Pa. 527, it was held error to refuse to instruct the jury that " the applicant and beneficiary in their application having stated and warranted that the insured 'never was sick,' and had no previous 'spitting of blood,' and had consulted no other physican and had 'no consumption,' and the written and printed statement in the proof of death, and the uncontradicted proof and testimony showing that he had spitting of blood, was sick previously, had consumption, and had consulted

Dr. Muhlenburg, the plaintiff cannot recover." In reversing the trial court, the late Chief Justice GREEN said: " In a case of very recent occurrence, in which we have just filed an opinion (March v. Metropolitan Life Insurance Co., 186 Pa. 629), we have had occasion to consider and decide this identical question. We there determined that the act of 1885 had no application in cases where the answer was false, and related to some matter material to the risk. Where it was doubtful whether the matter was material, the question of materiality must be submitted to the jury, but where the matter involved was palpably and manifestly material to the risk, the law was not changed either by the act of 1885 or by any decision before or since. Thus, in the present case, all the questions above enumerated were intrinsically and essentially material to the risk and have always been so held by all courts of last resort. As the act of 1885 made no change in the law where the matter in question was material to the risk, the duty of the court to pronounce upon this subject was the same after as before the act. As a matter of course there could not be any doubt that previous spitting of blood, or illness, or confinement to the house by reason of illness, or medical service, or the attendance of physicians, or having consumption, were subjects of the most serious and material character, and they have always been so held by the courts. As it was always the duty of the court before the act of 1885 to determine the materiality of the question and answer in cases which were perfectly manifest and free from all doubt, and the act makes no change in the law in such cases, so the same duty remains since its passage." We have held it to be error to submit the case to the jury where the uncontroverted evidence shows that the insured made false answers to questions as to when insured was last attended by a physician and for what cause, how long since he had consulted a physician and for what disease, and as to whether he had ever been sick, had any serious illness, had ever consulted a physician, had ever had spitting of blood, did not have consumption, was insured in any other company, had applied for insurance in any other company and been rejected, had always been temperate, had had any medical attendance within the year prior to the application, and if so, state disease and give name of physician. It has always been held that the court must declare as material

a false statement to a request that the insured give full particulars of any illness he might have had; and also an untrue statement that no life insurance company had declined or postponed an acceptance of a proposal to insure applicant's life. In each instance it was held to be the duty of the court to pronounce the answer material to the risk.

Under the interpretation placed upon the act of 1885 by the numerous decisions of this court, it is clear that the statements or answers made by the insured in this case, alleged by the defendant to be false, relate to matters material to the risk. The statements were made in reply to questions asked for the evident purpose of ascertaining the true condition of the applicant's health at the time of the delivery of the policy and prior thereto. The acceptance or rejection of the risk, as well as the rate of the premium, would depend on the information elicited by the questions. If the applicant was in bad health, it needs no argument to show that the risk to the company would have been increased, and would, therefore, have been rejected or a greater premium would have been demanded. The answers to the other questions were equally material to the defendant company. A truthful response to any of the questions was a prerequisite to intelligent and safe action by the defendant in passing upon the application of the insured.

For the reasons given we are of opinion that the trial court should have instructed the jury that the statements contained in the application, and alleged by the defendant to be false. were material to the risk, and that if they were found to be false or untrue, would avoid the policy.

The trial judge was right in refusing to withdraw the case from the jury, as requested in the defendant's twelfth point. The evidence submitted by the parties on the questions at issue was conflicting, and, hence, the case was necessarily for the jury.

The defendant, in the twenty-fifth assignment, alleges that the charge was inadequate. If there is any merit in this assignment the error will doubtless be corrected on the next trial.

The judgment is reversed with a venire de novo.