38 N.J. Super. 148 (1955)
118 A.2d 420
WARREN KREIS, PLAINTIFF-RESPONDENT,
v.
THOMAS OWENS  BY ORDER OF COURT HERBERT RICHARDSON, ADMINISTRATOR OF THE ESTATE OF THOMAS OWENS, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1955.
Decided November 14, 1955.
*150 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank M. Lario argued the cause for the respondent.
Mr. Walter S. Keown argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant challenges the validity of the jury verdict awarded to the plaintiff in this automobile negligence action.
*151 The accident out of which the suit arose took place on Sunday, October 4, 1953, at about 9 P.M., on the White Horse Pike in Berlin, Camden County, New Jersey.
Plaintiff Warren P. Kreis is a part-time police officer of the borough. On the evening in question he and the chief of police were standing together on the edge of the road. The chief noticed a northbound car approaching on the wrong side of the street. He and Kreis stepped 10 to 12 feet into the roadway and the chief blew his whistle to halt the car (which incidentally figured no further in the events which followed).
At this time Owens, accompanied by his wife, was driving in a southerly direction on the Pike. Apparently hearing the whistle, he stopped and seconds later another southbound car, driven by Herietel, ran into the rear of his car.
The immediately succeeding events are at the core of this controversy. Unfortunately, both Owens and his wife died some time thereafter and consequently their version was not available at the trial.
There was some testimony of not very substantial probative force suggesting that Owens' lights were not on. It appeared also that after the collision Herietel (who was not joined as a party defendant) had pleaded guilty to violating R.S. 39:4-97 which provides:
"A person driving a vehicle on a highway shall drive it at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing, and no person shall drive a vehicle on a highway at such a speed as to endanger the life, limb or property of a person."
According to a statement of plaintiff's counsel appearing in the record, the specific allegation was driving too close to another vehicle.
Proof adduced by the plaintiff supported the inference that upon the Herietel-Owens impact, the Owens car shot forward, struck the Kreis vehicle which was parked at the edge of the road, and then hit Kreis before he could *152 get out of the way, after which it continued on for about 100 feet before coming to rest.
A state trooper who appeared on the scene found Owens seated in his car having "respiratory troubles."
According to Herietel, after he collided with Owens both cars remained stationary for a long enough time for him to get out of his car. Then, he said, Owens shot forward, causing the injury to Kreis. This seemingly not too credible statement largely formed the basis for the plaintiff's contention that there were two separate and distinct accidents and that the Herietel mishap was an independent and unrelated incident so far as his injury is concerned.
The defense produced a physician who said he knew Owens before the accident and had seen him four days thereafter. An attempt was then made to establish that Owens had been suffering from a heart ailment prior to the mishap and what his condition was when the doctor visited him. Then, as the colloquy between court and counsel indicates, a hypothetical question was to be given to the doctor outlining Owens' condition before the accident as the doctor would have described it, the facts of the accident, including presumably a reference to the respiratory distress immediately thereafter, and an inquiry made for an opinion as to what Owens was suffering from when the trooper saw him before the ambulance was called. Manifestly the purpose was to provide an explanation as to why the Owens car, apparently out of control, had moved forward, perhaps 150 feet in all, striking the parked car and then Kreis before coming to a stop.
The effort to supply this proof was barred when objections were made and sustained. Although the proffer might have been clearer and more specific and made more understandable to the trial court, under the circumstances of the case the interests of justice warrant the conclusion that the purport thereof was adequately made known. And in our judgment the ruling, excluding the medical evidence, was prejudicially erroneous.
The situation surrounding this accident brings into sharp focus the realization that it is not always possible to *153 prove by direct and specific evidence a person's physical or mental condition at a particular time. As a result, when such a condition is relevant, the law permits it to be shown circumstantially by proof of the existence of the condition before the event in question and thereafter, so long as the offered proof is within such reasonable time proximity thereof as to permit a reasonable inference that it existed at the particular time.
Wigmore puts the principle this way:
"In showing the existence at a given time of any physical condition, the existence of such a condition at a prior or subsequent time is evidential." (Emphasis his.) 2 Wigmore, Evidence, § 225 (1940).
State v. Shiren, 15 N.J. Super. 440 (App. Div. 1951), supplies an illustration. The defendant was indicted for causing death by the reckless driving of an automobile. Intoxication at the time of the accident was charged by the state; Shiren contended that he had "blacked out" due to illness. About four months thereafter a specialist in neurology and psychiatry examined him for treatment of his condition. The doctor testified that he had obtained a history from the patient and made an electro-encephalogram which ordinarily will reveal whether a person has suffered a stroke. The trial court refused to permit the doctor to testify as to the results of the electro-encephalogram with respect to the existence of a disease of the brain when the accident occurred. Apparently at least one ground for the exclusion was the lapse of time separating the incident and the examinations.
The conviction was reversed and a new trial ordered, the court saying:
"Of course, we are unable to say whether Dr. Effron's testimony would or would not reveal a physical impairment or condition at the time of the accident that might have a bearing upon the defendant's alleged `black out.' However, in view of the sharply disputed question of his sobriety, the defendant was entitled to have the benefit of Dr. Effron's testimony so that the jury might determine whether the loss of control of his car was causally related to some physical impairment or the result of intoxication." *154 See also: Cerami v. Zimmerman, 8 N.J. Misc. 24 (Sup. Ct. 1929); People v. Inman, 315 Mich. 456, 24 N.W.2d 176, 181 (Sup. Ct. 1946); Ackerman v. Kogut, 117 Vt. 40, 84 A.2d 131, 134 (Sup. Ct. 1951); Commonwealth v. Sheppard, 313 Mass. 590, 48 N.E.2d 630 (Sup. Jud. Ct. 1943); Boyko v. United States, 22 F. Supp. 559 (D.C.M.D. Pa. 1938); Nophsker v. Supreme Council of Royal Arcanum, 215 Pa. 631, 64 A. 788 (Sup. Ct. 1906); Appeal of Sturdevant, 71 Conn. 392, 42 A. 70 (Sup. Ct. Err. 1899).
As has been said, just what the precise testimony of the doctor would be in this case is not entirely clear. However, a fair inference is deducible that its substance would have the tendency to establish that Owens suffered a heart attack or some form of aggravation of an existing coronary ailment when the first impact occurred, which was responsible for the course his car took and the distance it traveled, ostensibly out of control, before striking the plaintiff. Under the rule stated, the evidence should have been received.
We recognize that in a given situation it may indicate lack of due care for a person to drive on a public highway when he is suffering from a disease which he knows, or which a reasonable person should know, makes him subject to fainting or weak spells or seizures of a sort which may imperil his control of the vehicle. Cf. In re Lewis, 11 N.J. 217, 223 (1953). However, since the inquiry in the present case was cut off at its inception, no facts appear which support the view that Owens was aware or should have been aware prior to the collision of the existence of a heart condition which made it dangerous to others on the highway for him to operate a car.
From what has been said about the nature of the accident, plainly the problem of proximate cause was a crucial issue at the trial. Was the contact between the Herietel and Owens cars solely the product of Herietel's negligence and was the ensuing striking of Kreis by Owens' car chargeable entirely to that negligence? Was the Owens car, on the facts proved, simply a projectile driven into Kreis through Herietel's fault alone? Or was the contact with Kreis efficiently *155 produced by the concurring negligence of Herietel and Owens or by the sole and independent culpable acts of Owens?
In the charge of the court only two references were made to the vital issue of proximate cause. They were:
"Now the plaintiff sues defendant and alleges that because of the negligence of the defendant he suffered injuries, and that those injuries proximately resulted from the negligence of the defendant.

* * * * * * * *
I think if I were in your place, the first thing I would do in this case would be to decide: Has the plaintiff satisfied you by the greater weight of the believable evidence that he sustained injuries which proximately resulted from the defendant's negligence." (Emphasis ours.)
Defense counsel objected to the failure of the court to charge proximate cause. Without comment about the objection, the court sent the jury out to deliberate.
The factual setting of the case made the problem of causation of great importance; an importance which, in our opinion, could not be met by simply using the term "proximate cause" without adequately defining it and without explaining the definition in relation to the facts. Counsel was justified in assuming that so fundamental a matter would be covered in the charge and therefore cannot be considered so derelict in the performance of his own function to furnish requests to charge as to bar relief. Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 565 (App. Div. 1951). Under the circumstances of this case  and it must be noted that on an appeal such as this, each case must be considered on its own facts  it is our view that when the attention of the court was called to the matter, he should have proceeded to define and explain proximate cause. Kruschka v. Konvitz, 13 N.J. Misc. 299 (Sup. Ct. 1935); Hartwyk v. Shea, 114 N.J.L. 235 (Sup. Ct. 1935); Fair v. Floyd, 75 F.2d 920, 922 (3d Cir. 1935); Brumberger v. Burke, 56 F.2d 54, 56 (3d Cir. 1922); 65 C.J.S., Negligence, § 290b.
*156 The language of the Circuit Court of Appeals in Brumberger v. Burke, supra, is noteworthy:
"* * * We feel constrained to say that `proximate cause,' standing in and by itself, is an expression of legal significance with which the average juryman is wholly unacquainted. It is therefore the duty of a trial judge, where the question of `proximate cause' is involved, to explain to the jury in simple terms what the law means by that expression and to illustrate the application of its legal principles to the facts of the particular case which he is trying. Coupling an explanation of these legal principles with the facts of the particular case on trial is desirable, indeed, is necessary, in order that the jury may fully understand the line of their duty and how to perform it."
For the reasons stated, the judgment is reversed and a new trial ordered.