**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4910-17T2

BARBARA WEGNER and
RICHARD WEGNER,

     Plaintiffs-Appellants,

v.

NICHOLAS A. DERRICO and
J AND J DINA TRUCKING,

     Defendants-Respondents.

_____

Argued October 18, 2019 – Decided February 28, 2020

Before Judges Ostrer, Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1742-15.

Craig M. Aronow argued the cause for appellants (Rebenack, Aronow & Mascolo, LLP, attorneys; Craig M. Aronow, of counsel and on the briefs; Paul M. Brandenburg and Rachel E. Holt, on the briefs).

John V. Mallon argued the cause for respondents (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Ryan J. Gaffney, on the brief).

PER CURIAM

The key factual issue in this auto accident case was who had the green light. The accident happened shortly before dawn on November 11, 2014, at the intersection of U.S. Route 130 and County Route 522 in South Brunswick Township. Defendant Nicholas Derrico was heading south on Route 130. Plaintiff Barbara Wegner entered the intersection from eastbound Route 522, intending to turn north after crossing Route 130's southbound lanes. The two vehicles collided and Wegner suffered significant injuries.

Each party claimed to have the right of way. But, a major controversy at trial was whether Wegner's medical condition affected her actions. Wegner argues the court should have barred evidence of her medical history, because defendants presented no expert opinion to interpret it, and there was no competent evidence she actually suffered a medical episode. She contends the court's error led the jury to find her fifty-percent responsible, and Derrico and the trucking company that employed him, twenty and thirty percent responsible, respectively. As a result, her $375,000 in damages were halved.[1] We agree the trial court erred, and reverse and remand for a new trial on liability. We reject

---

[1] The jury awarded Wegner's husband zero damages on his per quod claim. For convenience, we used "Wegner" to refer to Barbara Wegner.

A-4910-17T2

Wegner's argument that she and her husband are entitled to a new trial on damages.

I.

The jury heard from Wegner and Derrico; their respective accident reconstruction experts; a motor carrier safety expert; two drivers who approached the intersection on northbound Route 130; and the responding police officer. Without reviewing the testimony in detail, it is fair to conclude that the evidence as to who had a green light, and who had red, was far from clear. Wegner and Derrico were at odds. She testified she stopped at the intersection with a red light, and proceeded only after it turned green. Derrico said he had a green light when he approached the intersection and saw Wegner cross his path. And each third-party witness's testimony was inconsistent with the other's, and in some respects, with prior statements.

Complicating the jury's fact-finding, the traffic lights could cycle through as many as four different phases to accommodate multiple turning lanes; but a phase could be skipped if no vehicle waited to turn.[2] In some phases, one direction of Route 130 had a red light when the opposite had green. So, one

---

[2] A fifth phase could be triggered by oncoming traffic from the east on Fresh Ponds Road, but the evidence was that road was closed the morning the accident occurred.

could not necessarily conclude that if a northbound witness had a red light, Derrico did also and not Wegner. The officer opined that Derrico had the right of way, based in part on a witness's statement that she later clarified. The traffic reconstruction experts selectively credited witnesses' statements and drew other inferences from the evidence to reach conclusions that favored their respective clients. The commercial motor carrier safety expert opined that Derrico and his employer failed to follow safety and training protocols, including those pertaining to accident avoidance.

The defense tried to convince the jury that Wegner entered the intersection against the light because she was suffering a seizure, caused by a medical condition that she had failed to treat consistently. As disclosed in discovery, Wegner periodically had stress-induced seizure-like episodes. They were caused by an assault and head injury she suffered when she was a school bus driver over fifteen years before the accident. She said it was diagnosed as post-traumatic stress disorder. During an episode, she experienced "tunnel vision," as she called it. She would just stare straight ahead for a minute or two, restricting her ability to see side to side; she would be unable to concentrate; and, a pain in the side of her face made it difficult to speak clearly. Her

4

neurologist prescribed medicine for it. In deposition, Wegner said her last episode was in 2010 or 2011, and she never had one while driving a vehicle.

The defense accident reconstruction expert discussed Wegner's medical history in his report, and postulated that her symptoms described a "focal or absence seizure." Although he conceded there was no evidence she suffered an episode before the collision, "with the medical history, it is a factor which must be considered."

In an in limine motion, Wegner's counsel sought to bar introduction of Wegner's medical and medication history, and challenged the defense expert's qualifications to address the matter. The court reserved decision, but barred mention of the subject in opening statements.[3] The court ultimately ruled on the motion before Wegner testified near the end of plaintiff's case. The court held that Wegner's "medical condition and her medications are . . . highly relevant to this issue of . . . why somebody would pull out in front of a tractor trailer." The court allowed defendants to inquire not only about her medicine for the seizure-like condition, but also medicines she took for other conditions. The court held

---

[3] We do not imply that the trial court was obliged to rule on the motion pre-trial. See State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014) (disfavoring "in limine rulings on evidence questions," and noting evidence questions are best addressed in the context of the trial).

that an expert was not necessary because defendants proposed to use Wegner's own descriptions of her condition and medications. The court also held that the defense could, in order to challenge Wegner's credibility, elicit apparent inconsistencies between Wegner's description of her condition and medication history in deposition, and records of statements she made to her physician and in an unrelated municipal court matter.

On direct-examination, Wegner described her history of seizure-like episodes and her symptoms. She said she was being treated and had not had an episode in years. On redirect, she explained that the symptoms were triggered by stress or nervousness; she could feel them coming; and she had no stress or anxiety the morning of the crash. She also said she had no problems with her various medications.

On cross-examination, Wegner was confronted with her neurologist's records, ostensibly to refresh her recollection of statements she made to him. Although Wegner testified that the documents did not refresh her recollection, defense counsel – over plaintiff's counsel's objection – repeatedly read aloud excerpts of the medical records, thereby presenting their content to the jury. Counsel then asked Wegner about her compliance with her anti-seizure medicine, as well as her use of other medicines. Defense counsel elicited that

Wegner had taken two weeks off as sick days during October, a month before the accident, and she was also out sick on November 10, the day before the accident, but could not recall why. However, in deposition, she said she had pneumonia in October. She insisted that she was not sick the morning of the crash. Defense counsel also elicited that Wegner was arrested multiple times, and in a municipal court proceeding in 2012, she said that she "zoned out" because of a traumatic seizure.

Before the start of the defense case, the court emphasized that it had not yet decided whether the defense expert could testify about Wegner's medical condition. However, Wegner's counsel stated that, based on the court's decision to allow questioning on the subject through Wegner, he felt impelled to raise the subject with the defense expert, to highlight his statement that defendant had no proof that Wegner's condition caused the accident. On cross-examination, Wegner's counsel also elicited that the expert had received no education in medicine or pharmacology, but he did say that he was an emergency medical technician for nearly twenty years.

To address the suggestion that Wegner had failed to take her medication as prescribed before the accident, her counsel sought to introduce her pharmacy

records. He and defense counsel agreed that both the pharmacy records and the neurologist's records would be introduced into evidence.

Wegner's medical history was the predominant theme of the defense summation. Using the pharmacy records, counsel noted numerous times during a multi-year period when Wegner did not timely renew her prescriptions. Wegner had testified that her physician regularly tested her blood to monitor the levels of her medicine in her system. Defense counsel noted that Wegner refilled her prescription twenty days before the accident, but he argued that was more than ninety days late, based on the previous refill date. Over objection, he suggested that the twenty days was too soon to build up the medicine in her system and to achieve its intended effect. The court held that the jury was free to draw the suggested inference from the evidence.

Defense counsel also highlighted the neurologist's records, which showed that Wegner went a significant period of time without seeing her neurologist, although she saw him three times in the year the accident occurred. Defense counsel also suggested that Wegner's sick days before the accident were somehow related. He asked the jury, "Why? We don't know. We don't know what's going on, but we do know she had been off the medication for three months."

A-4910-17T2

Counsel also noted that one of the records from a visit to the physician ten months before the accident stated that Wegner feared the onset of symptoms if she became stressed, and could not calm herself down. Counsel also highlighted Wegner's statement before the municipal court in 2012. In sum, defense counsel argued that Wegner ran the red light, and she did so because of her medical condition and her failure to treat it properly.

## II.

We agree with Wegner that the trial court erred in permitting defendants to reference Wegner's medical history of seizure-like episodes, and her alleged medication non-compliance. Absent expert opinion, defendants presented insufficient evidence that she suffered symptoms the morning of the accident, and such symptoms could have impelled her to run a red light.

We review evidentiary decisions under the abuse of discretion standard. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010); see also State v. Zola, 112 N.J. 384, 414 (1988) (stating "the necessity for . . . the administration of expert testimony" is within trial court's discretion). "An abuse of discretion 'arises on demonstration of manifest error or injustice,' . . . or when there is a 'clear error of judgment.'" Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008)

and State v. Brown, 170 N.J. 138, 147 (2001)). An improper evidentiary ruling will warrant reversal if it is "clearly capable of producing an unjust result." Manata v. Pereira, 436 N.J. Super. 330, 343-44 (App. Div. 2014) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 502 (1999)).

We acknowledge that a driver's medical condition may be relevant to determining whether he or she negligently operated a vehicle. "[I]n a given situation it may indicate lack of due care for a person to drive on a public highway when he is suffering from a disease which he knows, or which a reasonable person should know, . . . may imperil his control of the vehicle." Kreis v. Owens, 38 N.J. Super. 148, 154 (App. Div. 1955). Furthermore, "it is not always possible to prove by direct and specific evidence a person's physical or mental condition at a particular time." Id. at 152-53. However, circumstantial evidence of the condition must be timely:

> [W]hen such a condition is relevant, the law permits it to be shown circumstantially by proof of the existence of the condition before the event in question and thereafter, so long as the offered proof is within such reasonable time proximity thereof as to permit a reasonable inference that it existed at the particular time.
>
> [Id. at 153 (emphasis added).]

The evidence of Wegner's last episode was not "within such reasonable time proximity" to warrant suggesting she suffered an episode immediately before the accident. Wegner conceded that she told a municipal court in 2012 that she "zoned out" as a result of a traumatic seizure. That was two years before the accident. In her statements to her physician in 2014, which defendants introduced, she reported that she had not experienced any episodes. Defense counsel's suggestion that Wegner may have experienced an episode in October 2014, or the day before the accident – because she was out sick – was based on nothing but speculation. Notably, Wegner testified that she had pneumonia in October 2014, and could not recall why she did not go to work the day before the accident. A party may not prove causation based on "mere speculation." Kulas v. Public Serv. Elec. & Gas Co., 41 N.J. 311, 318 (1964).

There also was no basis in the evidence for the jury to infer, as defense counsel encouraged, that Wegner was not fully protected by her medicine the day of the accident. Even assuming she had been non-compliant in the fall of 2014, she refilled her prescription twenty days before the accident and, presumably, took the medicine during that period of time. The fact that Wegner's physician monitored her to assure appropriate levels of the medicine in her system did not warrant a reasonable inference that she was unprotected

the day of the accident. How long it took to achieve therapeutic absorption of Wegner's medicine was outside the ken of the jury and required an expert. Expert testimony is required if the issue is "so esoteric that jurors of common judgment and experience cannot form a valid judgment." Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982). In particular, expert testimony is required to prove causation of a medical condition. Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 672 (App. Div. 1993).

Without an expert opinion, and absent other relevant evidence, defendants should not have been permitted to suggest that Wegner was negatively affected by her alleged medication non-compliance. In Ratner v. General Motors Corporation 241 N.J. Super. 197, 204 (App. Div. 1990), the defendant suggested that the side effects of a hypertension medicine caused the driver-plaintiff to lose control of her vehicle. Defense counsel was permitted to read from the Physicians Desk Reference (PDR) a litany of potential side effects of the drug. Ibid. We held, "[W]ithout an expert opinion, [the PDR] should not have been admitted here." Id. at 205. We noted that the record included no evidence that the plaintiff experienced any of the listed side effects. Ibid.

Furthermore, even if Wegner suffered from an episode immediately before the accident, the evidence was insufficient to enable the jury to conclude – as

the defense suggested – that her episode caused her to enter an intersection against a red light. She testified that when she had an episode, she stared ahead and was unable to concentrate. A jury could not infer, without expert opinion, that those symptoms prevented her from discerning red from green, or propelled her to enter an intersection against a light. Defendants were obliged to call an expert witness, familiar with Wegner's condition, to support such an inference.

We reject defendants' argument that Wegner's medical history was otherwise admissible to impeach her credibility. In Allendorf, we held that evidence that the plaintiff had episodes of passing out was admissible to impeach her credibility, after she testified that she was in perfect health and never blacked out. 266 N.J. Super. at 674. The error in this case was permitting initial inquiry about Wegner's medication compliance, the frequency of her doctor visits, and whether her last episode was in 2012, or 2010 or 2011. That was inadmissible absent expert opinion. Defendants may not, in the guise of impeachment, bootstrap the introduction of otherwise inadmissible evidence.

We also reject defendants' invited error argument – that Wegner's counsel consented to the introduction of her physician's records in return for the agreement to admit her pharmacy records; and her counsel chose to cross-examine defendants' expert about Wegner's condition. It is abundantly clear that

13

Wegner's counsel took those steps as a result of the trial court's initial error in permitting the introduction of evidence of Wegner's medical condition and medication history; and the trial court's error in permitting defense counsel to present the substance of medical records through Wegner, who did not recall them. The trial court had "a duty to prevent [the] witness from putting into the record the contents of an otherwise inadmissible writing under the guise of refreshing recollection." State v. Caraballo, 330 N.J. Super. 545, 557 (App. Div. 2000).

In sum, we are convinced that the introduction of evidence of Wegner's medical condition and her alleged medication non-compliance was in error, and capable of producing an unjust result. Inasmuch as the issue of who ran the red light was hotly disputed, and defense counsel placed great weight on Wegner's condition, the evidence may have led the jury to allocate a greater share of fault to Wegner than it would have done otherwise. Therefore, a new trial on liability is required.

### III.

Wegner contends that she is also entitled to a new trial on damages. We are unpersuaded. "The scope of the new trial depends on the nature of the injustice." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 462 (2009)

14

(quoting Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 490 (2001)). When the damages award was not "'tainted' by the error in the liability portion of the case . . . retrial need not include the issue of damages." Ibid. Wegner has not shown how the trial errors affected the jury's damages verdict. Therefore, a new trial on damages is not warranted.

Given our resolution of the above issues, we need not address Wegner's remaining points on appeal.

Reversed as to liability and remanded for a new trial on liability. Affirmed as to damages. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION