NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0506-12T4


MARIA C. MANATA,

    Plaintiff-Respondent,

v.

FRANCISCO A. PEREIRA,

    Defendant-Appellant,

and

STATE FARM INSURANCE COMPANY,

    Defendant.

_____

> APPROVED FOR PUBLICATION
>
> **June 20, 2014**
>
> **APPELLATE DIVISION**

Argued November 19, 2013 — Decided June 20, 2014

Before Judges Reisner, Ostrer and Carroll.[1]

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5822-10.

David Della-Badia argued the cause for appellant (Sellar Richardson, P.C., attorneys; John M. Kearney, of counsel; Christopher W. Ferraro, on the briefs).

John J. Megjugorac argued the cause for respondent (Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd, LLP, attorneys; Michael

---

[1] Judge Carroll did not participate in oral argument. However, with the consent of counsel he has joined this opinion. R. 2:13-2(b).

A. Gallardo and Mr. Megjugorac, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This appeal arises out of an automobile-pedestrian collision. It requires us to chart limits on the use of impeachment by omission when a cross-examiner references a third-party report to discredit a witness, without seeking to introduce the report into evidence.

Defendant Francisco A. Pereira, the driver, appeals from a $350,000 judgment after a jury found him solely liable in negligence for causing plaintiff Maria C. Manata permanent injury. Defendant also appeals from the trial court's order denying his motion for a new trial, and remittitur. In addition, he challenges the award of attorney's fees under the offer of judgment rule. R. 4:58-2. Defendant argues that the trial court committed evidentiary errors pertaining to both liability, and the nature and permanence of plaintiff's injury.

We agree that a new trial is required because of evidentiary errors pertaining to the issue of liability. In particular, plaintiff's counsel engaged in improper cross-examination when he confronted defendant with a police report that counsel did not offer in evidence, but whose substance he communicated to the jury. The report did not contain any

2

statements from defendant conveying his version of the accident. Yet, counsel attempted to demonstrate that defendant, in discussions with police, omitted the version of the collision that he later asserted at trial. This improper attempt to impeach by omission was capable of producing an unjust result.

## I.

Defendant's car struck plaintiff as she attempted to cross Ferry Street near Christie Street in Newark around 6:45 a.m. on August 8, 2008. Ferry Street is one-way at that point, with two lanes of traffic traveling east-bound.

Only plaintiff and defendant testified about the circumstances of the accident. Plaintiff maintained she was struck while walking in the crosswalk. Defendant asserted that plaintiff had darted out from between two buses, attempting to cross in the middle of the block.

Plaintiff testified that she exited a bus that stopped at the southwest corner. With the Ferry Street traffic facing a red light, she proceeded in the crosswalk in front of the stopped bus, attempting to cross Ferry on her way to work. She asserted she saw defendant turn left, onto Ferry. As she crossed in front of the lanes of traffic, she saw defendant again proceeding toward the crosswalk. Fearful he was not going to stop in time, she turned around, and tried to return to the

corner. Defendant's vehicle struck plaintiff on the right side of her body, knocking her down.

Plaintiff testified that she was not rushing, as she had arrived with ample time before she was due at work. She said that defendant offered to take her to a hospital. She declined, asking him to take her home. She then went to the hospital with her adult daughter. Plaintiff testified that defendant apologized, both at the scene and a few days later when he visited her at home with his mother. Plaintiff also asserted that defendant stated he could not see plaintiff cross the street because of sun glare. Plaintiff's daughter testified about defendant's visit to their home, and confirmed his apology and reference to sun glare.

Defendant agreed that he made a left turn onto Ferry Street and shifted into the right lane. He was on his way home from work after a late-night shift as a truck driver. Defendant insisted that two buses had stopped on the right side of the street. There were also two cars between him and the corner in the right lane. He testified that as he slowed for the stopped traffic, plaintiff darted out from behind the first bus, and in front of the second bus. Defendant was unable to avoid her. Defendant conceded that there was some sun glare, but he denied that caused the accident.

Plaintiff's main effort to discredit defendant's version of events was based on a police report that was not introduced into evidence. It also was not marked for identification although, as we discuss below, plaintiff's counsel made liberal use of the document.[2] However, without objection, the report is included in the record before us.

The police did not respond to the scene of the accident. Defendant testified that he went to the police station later that day and provided the police with his version of events. He stated that when he arrived at the police station, plaintiff was already present. Plaintiff did not address her visit to the police station or her interview with an officer. In response to the judge's inquiry, defendant testified that he believed he spoke to the officer who prepared the report. The undated police report did not include defendant's version of the accident. Defendant contended that after he received a copy, he asked the police to correct it, to no avail.

The police report was made on the standard form NJTR-1. See N.J.S.A. 39:4-131 (directing the Motor Vehicle Commission

---

[2] A court should generally mark an exhibit to which reference is made, even if it is not offered in evidence. See R. 1:2-3; N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002) (stating that the failure to properly identify documents "not only violate[s] basic rules of trial practice . . . but inhibit[s] the appellate process").

(MVC) to prepare standard forms for motor vehicle accident reports). The "Crash Description" section of the report referred only to the victim's version of events:

> Event #291668 Victim states she was crossing the street on Ferry St/Christie, on her way to work when Veh (2) made a stop on a Traffic Light, but strucked [sic] the Pedestrian, causing minor, bruises on her right hip, and right thighs [sic]. The victim[']s daughter was notified, and transported the victim to St. Michaels Medical Center for further treatment. No EMS was notified, No Police Pursuits conducted at this time.

The report included a crash diagram consistent with plaintiff's version of events. It depicted defendant's car at the head of the line of cars in the right lane, with the front of the car touching the crosswalk, and a stick figure of a pedestrian within the crosswalk. According to the codes inserted in various boxes, the report indicated in the "pre-crash action" section that the pedestrian was "Crossing At 'Marked' Crosswalk" and the vehicle was "Slowing or Stopping."[3]

----

[3] To understand the meaning of the codes, we take judicial notice of the MVC guide to police for preparing motor vehicle crash reports: N.J. Motor Vehicle Comm'n, <u>Police Guide for Preparing Reports of Motor Vehicle Crashes</u> 41 (rev. 2011), <u>available at</u> http://www.state.nj.us/transportation/refdata/accident/pdf/NJTR1 -Police_Guide.pdf; and Police Technical Assistance Program, <u>NJTR-1 Form Field Manual</u> 53 (rev. Jan. 23, 2009), <u>available at</u> http://www.state.nj.us/transportation/refdata/accident/pdf/NJTR- 1Field_Manual.pdf. <u>See</u> <u>N.J.R.E.</u> 201(a) (providing for judicial notice of "ordinances, regulations and determinations of all
(continued)

"Apparent contributing circumstances" of the crash were "Driver Inattention" and "None" for defendant, and "Other Pedestrian Factors" for plaintiff. The report did not reference such other possible circumstances as "Failed To Yield Right of Way to Vehicle/Pedestrian" and "Sun Glare," to support plaintiff's version, or "Crossing where prohibited" to support defendant's version. The report indicated "No visible injury noted, but victim complains of pain," although, as noted, under "Crash Description," the report stated that plaintiff suffered minor bruises on her right side. Also, the form left blank box 15, where the officer could have indicated the accident occurred at the intersection.

The report did not explicitly indicate that the officer spoke to defendant. No reference is made to the version of events to which defendant testified at trial. Nor does the

---

(continued)
governmental subdivisions and agencies thereof"); N.J.R.E. 202(b) (stating that an appellate court may take judicial notice of any matter specified in N.J.R.E. 201); State v. Marquez, 408 N.J. Super. 273, 286 n.5 (App. Div. 2009) (taking judicial notice of MVC manuals), rev'd on other grounds, 202 N.J. 485 (2010); see also State v. Gandhi, 201 N.J. 161, 200 n.18 (2010) (taking judicial notice of Division of Criminal Justice training manual for police officers conducting domestic violence interviews); Twp. of Dover v. Scuorzo, 392 N.J. Super. 466, 474 n.4 (App. Div. 2007) (taking judicial notice of Handbook of New Jersey Assessors although not introduced into evidence before trial court).

report attribute to defendant a version of events consistent with plaintiff's.

Plaintiff's counsel attempted to impeach defendant by demonstrating that defendant's claim that plaintiff darted out from between two buses was a recent fabrication. Counsel relied on the absence of defendant's version of events in the police report. However, plaintiff's counsel made no effort to introduce the police report into evidence, and did not call the police officer who prepared the report. Questioning about the police report formed a major part of the cross-examination of defendant. We quote it at length:

> Q    And when you went to the Police Station and you told them your . . . version of the accident, did you tell them that Ms. Manata darted out from between two buses and that she want [sic] in the crosswalk?
>
> A    I — I told them that — that she darted out.  Exactly.

Counsel also attempted to elicit that there was no language barrier between defendant and the officer, apparently because defendant had previously testified that he spoke to plaintiff in Portuguese, but he also spoke English. Defense counsel objected that the police report was hearsay.

> Q    And you understand [sic] him well and he understand [sic] you well; right?
>
> A    I — I don't think he understood me well because when I got the — the report — excuse

A-0506-12T4

me. When I got the report, the report states —

[DEFENSE COUNSEL]: Objection. The Police report is hear say [sic]. The Police Officer's not coming in.

THE COURT: Well, understood but, I mean —

[PLAINTIFF'S COUNSEL]: — I'm not going to admit it into evidence. Ask him what — and —.

THE COURT: Yea. I — I didn't stop you.

[PLAINTIFF'S COUNSEL]: Okay. Thank you.

Q Is there —

THE COURT: Start again.

Q Okay. I'll start again. What — what language did you speak to the Police Officer?

A I spoke in English — to the Police Officer.

Q And he spoke to you in English?

A Correct. Yea.

Q Was there any communication problem between you and the Police Officer?

A I don't know if there was communicate [sic] — you know, I don't know if there was a mis-understanding or what but, you know.

Although the police report did not attribute any statement to defendant, plaintiff's counsel asked defendant if he recalled

telling the officer that he struck plaintiff while she was in the crosswalk.

Q   Do you remember saying that you were making a stop at the light and you struck Ms. Manata?

A   I was coming to a stop because you know, the light was red and there was [sic] two cars in front of me.

Q   Do you remember telling the Police Officer that you were the first one coming in to — to the stop light?

A   No.  I — I did not tell the Police Officer that.

Q   Do you remember telling the Police Officer that — that Ms. Manata was hit in the crosswalk?

A   I did not tell the Police Officer that.

Q   You're saying that you told the Police Officer that she darted out from in between two buses?  Is that what your testimony is?  Did you tell the Police Officer that?  Yes or no?

A   I told — you know, that she darted out between two buses.  I don't you know — I don't know, you know what he understood.

Q   So, you said you're traveling down Ferry Street in the right lane when all of a sudden she darts out from between two buses in front of your car?

A   Hmm mmm.

Q   Was that — when you reviewed the report did you find it accurate in that regard?

A    No, I did not find the report accurate. As a matter of fact, I went back to the Police Station to have that changed.

Over defense objection, plaintiff's counsel elicited the substance of the police report — that it did not contain defendant's version of the collision.

Q    There's no mention of that in this report; is there?

A    No mention of what?

Q    That — anybody darting in between two buses.    There's no mention of that; is there?

A    No, because —

[DEFENSE COUNSEL]:  Objection.

THE COURT:    I'll allow it.

Q    There's no mention of that; is there?

A    No.    The report is erroneous.    That report was [sic] written was erroneous.    The lady did not cross in the crosswalk; okay? And I went back to the Police Station to have that changed.    The — the Officer did not want to change it.    He said when you go to court, you explain it to them.    He did not want to change it.    That — that — that was wrong.    That report.    It was erroneous. About the crosswalk.

Q    And how about — how about the fact that it doesn't mention, at all that her darting out from between buses — do you remember — did you remember being asked about what you disagreed with about the Police report when — when you testified?

11

THE COURT:     This is not a memory contest. If you're going to use a deposition, I'll tell you again, you use it the way it should be used.

. . . .

Q     Question was posed to you at — at your deposition on October 21st, 2011 when you testified under oath.  And the question was, ["]did you notice whether they included your version of the accident in the Police report or not?["]  Your answer, ["]I looked at the Police report when I got it after and after that I didn't — I haven't touched it since and right now I don't even remember — my version.  I would imagine it's there — you know, one thing.  I did not notice.["]  And then later . . . you say, "what I noticed was that on it, it states on there that the lady was walking on the crosswalk; okay?  And that's not the way it happened, you know?  That is erroneous right there, you know?  I went back to the Precinct to the Officer, you know, could change that but, he was unwilling to do it".  And then the — the next question that was posed to you is, ["]was there anything else?  Any other error that you saw in the Police report that you thought should be changed?["]  Your answer, ["]no, I believed it was that she — the crosswalk I know was erroneous and I haven't read the Police report since when I first got it — got it, so I don't remember, you know if there was anything else.["]  Do you remember saying that?

A     Yea, I do.  Yea.

Plaintiff's counsel again established that defendant's version was omitted from the police report not in evidence.  The court sustained an objection only as to a question regarding the police officer's credibility.

Q    Any mention what so ever of — of Ms. Manata darting out from between two buses?

A    Any mention of it on here?  No.

Q    No.  This Officer got that wrong too you're saying.

[DEFENSE COUNSEL]: Objection, Your Honor. He's — now, he's testifying to what the Police Officer did and did not do.

THE COURT:    Yea.  Sustained.

Plaintiff's counsel returned to the police report later in the cross-examination, conveying to the jury the accident diagram contained in the report.

Q    Okay.  Here's the Police report again.

A    Hmm mmm.

Q    It shows — you see the diagram?

A    Right.  yea.  I saw —

[DEFENSE COUNSEL]: Objection.  The diagram was — can I approach, Your Honor?

THE COURT:    Yes.

              (SIDEBAR — INAUDIBLE)

Q    All right.  Just take a look at that diagram.  You see the diagram —?

A    Uh huh.  Yes.

Q    See how it shows a little person inside the crosswalk?

A    — I saw that already.  Yes.

Q You . . . deny that the Police Officer got the information placing her in the . . . crosswalk from you; correct?

A That he got — from me, he didn't get it because I didn't — I didn't state that — that she was in the crosswalk. He didn't get it from me.

In his summation, plaintiff's counsel returned to the police report, arguing that defendant's version did not appear in it, reflecting that it was a recent fabrication.

And when is the first time that that version of the accident comes up? Not when he spoke to the police. In this case; after the police come to court. Is that credible?

He had the opportunity to speak to the police officers at the very moment of the accident. And his testimony was basically, not that what he told plaintiff before going to the police station — there was sun-glare; that he didn't see her — and went back where he told plaintiff and her daughter — daughter present — mother — there was sun-glare; he just didn't see her; he was sorry.

And — and I'm sure this gentleman was sorry. But it was an accident. And he struck her with his vehicle. And the accident happened for a reason. And that reason is something that had changed from — from that time to now. And — and your job is to decide is that credible. Why did he make that change?

Was the police officer asked why — you know, why — why doesn't anything that you're saying now show up in the police report that [sic]. Which was taken that very night when you went down for the police report together. Why was the police officer left

14

with the impression that Ms. Manata, Maria —
she was in the crosswalk?

Why isn't there any mention of Ms.
Manata darting out from between two buses?

During deliberations, the jury submitted a request, "'May we see the police report?'" Defense counsel objected, stating it was not in evidence. The court agreed. The judge restated the request and then responded,

The answer to that is no. It's not in evidence.

You may recall the police did not respond to the scene. And this was prepared after the event. And to the extent that it contains conversations with the parties it's not proper; it's not evidentiary at this point. So you will have to get along without it.

The jury of seven unanimously found defendant was negligent in the operation of his vehicle, which proximately caused the collision with plaintiff, and plaintiff was not negligent in crossing the street. The jury also found that plaintiff suffered permanent injuries and, six to one, awarded compensatory damages of $350,000. As plaintiff had made a pre-trial offer of judgment of $30,000, plaintiff sought attorney's fees. The court awarded $28,000, accepting counsel's hourly rate of $350, but reducing the hours submitted from ninety to eighty. The court later denied a motion for a new trial.

15

On appeal, defendant raises the following points[4] for our consideration:

> POINT II. The police report was impermissibly used during cross-examination of defendant.
>
> POINT III. The plaintiff improperly introduced the radiologist and neurologist's opinions concerning the diagnostic studies.
>
> POINT IV. The photographs depicting bruising were improperly admitted as they are prejudicial.
>
> POINT V. Defendant is entitled to a new trial on damages or a remitter because the award shocks the conscience and is against the weight of the evidence.
>
> POINT VI. Plaintiff's request for counsel fees was not supported by . . . contemporaneous records and the court impermissibly relied on law that has never been adopted in New Jersey.

## II.

We review trial courts' evidentiary decisions for an abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). In particular, "[c]ourts have a broad discretion in determining the scope of cross-examination." State v. Silva, 131 N.J. 438, 444 (1993). Although we generously review a trial court's evidentiary rulings, we may overturn the trial court's evidentiary decision if there is a clear error of judgment or

---

[4] Point I pertains only to the standard of review.

the decision lacks the support of credible evidence in the record. Estate of Hanges v. Met. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010); see also State ex rel. J.A., 195 N.J. 324, 340 (2008) (finding abuse of discretion in admitting hearsay statement as present sense impression); State v. Kemp, 195 N.J. 136, 149 (2008) (finding abuse of discretion in admitting N.J.R.E. 404(b) evidence). However, even if we discern error, we will reverse a judgment based on an evidentiary error only if we are convinced that the error "was 'clearly capable of producing an unjust result.'" Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 502 (1999) (quoting R. 2:10-2); see also Kemp, supra, 195 N.J. at 149-50 (finding admission of N.J.R.E. 404(b) evidence to be harmful error).

The cross-examination of defendant was designed to impeach him by highlighting his evident failure to convey to police the version of the accident he asserted at trial — that plaintiff entered the street behind a bus, and not in the crosswalk. Plaintiff's counsel argued defendant's apparent omission demonstrated that his version of the accident was a late fabrication.

"Impeachment by omission" is a recognized means of challenging a witness's credibility. "A statement from which there has been omitted a material assertion that would normally

have been made and which is presently testified to may be considered a prior inconsistent statement."  State v. Provet, 133 N.J. Super. 432, 437 (App. Div.), certif. denied, 68 N.J. 174 (1975); see also Silva, supra, 131 N.J. at 444-45; State v. Marks, 201 N.J. Super. 514, 531-32 (App. Div. 1985), certif. denied, 102 N.J. 393 (1986).  This principle is widely accepted. Jenkins v. Anderson, 447 U.S. 231, 239, 100 S. Ct. 2124, 2129, 65 L. Ed. 2d 86, 95 (1980) ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted."); Kenneth S. Broun, McCormick on Evidence § 34 (7th ed. 2013) ("[I]f the prior statement omits a material fact presently testified to and it would have been natural to mention that fact in the prior statement, the statement is sufficiently inconsistent."); 3A Wigmore on Evidence § 1042 (Chadbourn rev. 1970) ("A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact.")

Under appropriate circumstances, the prior inconsistent omission can be offered solely to discredit, or also as substantive evidence.  See Provet, supra, 133 N.J. Super. at 437.  A trial judge retains the authority under both N.J.R.E. 403 and N.J.R.E. 611 to guard against unfair use of the

technique.  See, e.g., Jenkins, supra, 447 U.S. at 239, 100 S. Ct. at 2129, 65 L. Ed. 2d at 95 (stating that in federal courts, "silence cannot be used for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result").  A proper foundation must be laid to establish that it would be natural for the witness to have made the omitted statement.  Silva, supra, 131 N.J. at 447-48.

In this case, defendant denied that he omitted his version of the accident to police.  He testified that he told the police that plaintiff darted between the two buses.  Plaintiff could have attempted to offer extrinsic evidence of the alleged omission by trying to introduce into evidence the police report.  See N.J.R.E. 607 (authorizing introduction of extrinsic evidence relevant to issue of credibility); N.J.R.E. 613(b) (authorizing court to exclude extrinsic evidence of a prior inconsistent statement unless the witness is afforded an opportunity to explain or deny the statement).  Generally, a police report is admissible as a record of a regularly conducted activity, commonly known as a business record, N.J.R.E. 803(c)(6), and as a public record, N.J.R.E. 803(c)(8).

A police report may be admissible to prove the fact that certain statements were made to an officer, but, absent another hearsay exception, not the truth of those statements.  See

Estate of Hanges, supra, 202 N.J. at 375 n.1; State v. Lungsford, 167 N.J. Super. 296, 310 (App. Div. 1979) ("[A] police record is admissible to prove, for example, that a report of crime was made by a member of the public and when the report was made and received."). Likewise, evidence of the absence of an entry in a business record may be offered to prove the non-occurrence or nonexistence of a matter. N.J.R.E. 803(c)(7). In the case of the absence of a public record entry, the rule requires a certification that a diligent search failed to disclose the record or entry. N.J.R.E. 803(c)(10).

However, to secure its receipt into evidence, the proponent is required to present a custodian of records, if not the particular officer who prepared the report. See Dalton v. Barone, 310 N.J. Super. 375, 377-78 (App. Div. 1998). Defendant argues that Statham v. Bush, 253 N.J. Super. 607, 615 (1992), bars admission of a police report absent the testimony of the particular officer who prepared it. As did the panel in Dalton, supra, 310 N.J. Super. at 377-78, we reject such a literal reading. "If the police officer who wrote the report is unavailable, any other police official who could state that the report was a record made in the regular course of the officer's duties and was made at or near the time of the event may establish the report's admissibility." Id. at 378.

However, the court retains the power to bar a business record if "the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy." N.J.R.E. 803(c)(6); Dalton, supra, 310 N.J. Super. at 378. Similar authority applies to the absence of an entry, where "the sources of information or other circumstances indicate that the inference of nonoccurrence or nonexistence is not trustworthy." N.J.R.E. 803(c)(7); see also N.J.R.E. 803(c)(10) (authorizing the court to exclude a certification to prove the nonexistence or nonoccurrence of a matter based on the absence of a public record, "where the sources of information or other circumstances indicate that the inference of nonoccurrence or nonexistence is not trustworthy"). Consequently, the court may exclude the report from evidence if the authenticating testimony of the police witness indicates that a report did not satisfy the preconditions of admissibility; for example, it was prepared contrary to regular practice, or under circumstances indicating it was not trustworthy.

In this case, the court made no finding about the reliability or trustworthiness of the police report, because plaintiff made no effort to introduce it into evidence. Moreover, it is uncertain, at least based on the record before us, that plaintiff could have laid a sufficient foundation for

admission of the report as a business record. Without an officer's testimony, it is unclear whether the report was prepared in accordance with regular practice including governing guidelines. We note that the current manual for preparing motor vehicle crash reports requires an investigating officer to include the versions of the collision from all pedestrians, operators and witnesses. See Police Guide, supra, at 41 ("At a minimum describe the following 3 basic elements: . . . A summary of the accounts from all operators, pedestrians and witnesses. . . ."). The Police Guide's "Recommended Procedures for the Handling of Motor Vehicle Crashes Not Investigated at the Scene" also recommends the preparation of reports by the reporting individuals on a separate SR-1 form. Id. at 7.

One may reasonably question whether the circumstances of the report's preparation indicate that the inference that defendant omitted his trial version of the accident is trustworthy. See N.J.R.E. 803(c)(6); N.J.R.E. 803(c)(7); see also N.J.R.E. 803(c)(10). The officer failed to attribute any version of the accident to defendant. Even if the report were otherwise admissible, the police officer's diagram of the accident was not based on his personal observations at the scene; rather, it relied on what another person told him. It therefore constituted either the inadmissible opinion of the

officer or inadmissible embedded hearsay of plaintiff. <u>Cf.</u> <u>Brown v. Mortimer</u>, 100 <u>N.J. Super.</u> 395, 405-06 (App. Div. 1968).

Instead of seeking to introduce the police report, plaintiff's counsel engaged in a form of "phantom impeachment." <u>See</u> James McElhaney, <u>Phantom Impeachment</u>, 77 <u>A.B.A.J.</u> 82 (Nov. 1991) (describing "phantom impeachment" as the contradiction of a witness on "key testimony——by someone who never takes the stand and who never says a word in court"); <u>see also</u> <u>State v. Metz</u>, 636 <u>N.W.</u>2d 94, 98 (Iowa 2001). Plaintiff's counsel, over defense objection, presented to the jury the substance of the police report, which was represented to reflect the omission of defendant's version of the collision. Counsel accomplished that by asking defendant himself what the report stated. Counsel repeatedly confronted defendant with the fact, unproved by competent evidence received by the court, that "[t]here's no mention of . . . [defendant's version] in this report; is there?"

After the court overruled the defense objection, defendant was constrained to admit that his version was absent from the report, and to discuss his efforts to correct it. Plaintiff's counsel, over defense objection, was permitted to elicit from defendant a description of the accident diagram in the report, and his denial "that the Police Officer got the information

placing her in the . . . crosswalk from you[.]" In his summation, plaintiff's counsel asked rhetorically, "why doesn't anything that [defendant was] saying now show up in the police report" and "[w]hy was the police officer left with the impression that Ms. Manata . . . was in the crosswalk?"

The cross-examination of defendant was improper, as was plaintiff's summation, which was based on the cross-examination. We recognize that "[c]ross-examination relating to a witness's credibility need not be based on evidence adduced at trial." State v. Martini, 131 N.J. 176, 255 (1993). However, a question in cross-examination is improper where "no facts concerning the event on which the question was based were in evidence and the [questioner] made no proffer indicating his ability to prove the occurrence." State v. Rose, 112 N.J. 454, 500 (1988); see also Martini, supra, 131 N.J. at 255 (stating that a prosecutor could not "ask questions about topics for which she had no basis in truth").

Put another way, "[i]t is improper 'under the guise of "artful cross-examination," to tell the jury the substance of inadmissible evidence.'" United States v. Sanchez, 176 F.3d 1214, 1222 (9th Cir. 1999) (quoting United States v. Hall, 989 F.2d 711, 716 (4th Cir. 1993)); see also United States v. Check, 582 F.2d 668, 683 (2d Cir. 1978). "The reason for this rule is

that the question of the cross-examiner is not evidence and yet suggests the existence of evidence . . . which is not properly before the jury."  State v. Spencer, 319 N.J. Super. 284, 305 (App. Div. 1999); see also State v. Bowser, 297 N.J. Super. 588, 603-04 & n.3 (App. Div. 1997) (providing example of improper cross-examination based on a police report not in evidence); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 4 on N.J.R.E. 803(c)(6) (2013).

We are constrained to reverse on this ground.  The police report was essentially presented to the jury as evidence that defendant omitted from the police the version of the collision he presented at trial.  The error was significant.  The issue of liability was close.  In large part, it was a credibility contest between plaintiff and defendant.  There were no other witnesses to the collision.  We recognize that defendant apologized, and admitted that there was sun glare.  However, that was not a clear admission of fault; defendant's vision could have been affected by sun glare even if plaintiff darted out from behind a bus.

The impeachment by omission, which formed a major part of the cross-examination of defendant, could well have tipped the scales between the competing versions of events.  The jury's interest in the police report, evidenced by its request during

deliberations, supports our view that the extensive cross-examination of defendant regarding the police report was "clearly capable of producing an unjust result." R. 2:10-2.

Upon remand, if plaintiff seeks to make any use of the police report, the trial court shall hold a N.J.R.E. 104 hearing to determine its reliability, admissibility, and the propriety of utilizing it in cross-examination. At that hearing, the parties would have an opportunity to explore the issues we have raised regarding the peculiarities of the report, and its compliance with any guidelines governing its preparation.

### III.

**[At the direction of the court, the published version of this opinion omits Part III, addressing issues pertaining to the evidence of permanent injury, and the court's award of fees under the offer of judgment rule. See R. 1:36-3.]**

### IV.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION