**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2867-15T3

K.T.,

    Plaintiff-Respondent,

v.

A.F.,

    Defendant-Appellant.

_____

Argued June 8, 2017 — Decided July 28, 2017

Before Judges Hoffman and O'Connor.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1170-16.

Lynne M. Machtemes argued the cause for appellant (Iacullo Martino, LLC, attorneys; Ms. Machtemes, on the brief).

Respondent has not filed a brief.

PER CURIAM

In this unopposed appeal, defendant A.F. appeals from a January 28, 2016 final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (the Act),

N.J.S.A. 2C:25-17 to -35.1. Based on our careful review of the entire record,[1] we reverse and remand for a new FRO hearing.

## I.

The parties dated for two years, with the relationship ending in August 2013. Both parties work for the Hudson County Corrections Department, but they serve on separate shifts. On November 6, 2015, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant based on her allegation that defendant came to her residence in Jersey City and "slash[ed] her front driver[-]side car tire." The complaint further alleged defendant committed the predicate acts of criminal mischief, N.J.S.A. 2C:17-3; harassment, N.J.S.A. 2C:33-4; and stalking, N.J.S.A. 2C:12-10. The complaint also referenced five prior acts of domestic violence that occurred in 2013, 2014, and 2015.

On December 1, 2015, the parties were self-represented at the FRO hearing. Plaintiff testified that at 6 p.m. on November 5, 2015, she was at home with her ten-year-old daughter, looking out her window, when she saw defendant "creeping" by her car. Plaintiff stated she saw defendant make a motion, described by the

---

[1] After defendant filed his notice of appeal, he filed a motion to supplement the record, which we reserved for consideration by the merits panel. Following oral argument, we granted defendant's motion.

court for the record as a stabbing gesture, and then heard a hissing noise come from the tire; however, she could not see what, if anything, was in his hands at the time. Plaintiff testified she and her boyfriend, Rodney Hill, ran outside, but defendant got into a car (later described as a "dark Volkswagen"), made a quick U-turn, and sped away.

When the court questioned plaintiff regarding the prior history of domestic violence referenced in her complaint, starting with a July 2015 incident, plaintiff described an incident when defendant came to her residence at 1 a.m., wanting "to talk." When she refused his request and closed the door, "he continued on ringing my doorbell[,] waking up my children."[2] Plaintiff claimed to have a police report regarding the incident; however, the police report concerned a May 2015 incident. Plaintiff attempted to explain her confusion, noting "there were so many incidents that took place." She then stated the incident occurred the year before, in July 2014; she also cited three different incidents of defendant "peeking through the window."

The court asked plaintiff if she was describing three incidents or one incident in July, "[b]cause there's only one"

---

[2] In contrast to her testimony at the FRO hearing, plaintiff's complaint alleged defendant came to her "apartment trying to get in her door to fight her."

incident listed in the complaint. Plaintiff replied, "A combination of incidents." The court responded:

> We can't do that. What you need to do is you need to go down to the [DV] Unit and amend the complaint to specify . . . every incident.
>
> . . . .
>
> You can't . . . combine three incidents into one in July[,] [a]nd then testify the way you've been. . . . [T]he complaint doesn't support that. So you need to amend the complaint . . . to specify the particular dates.

The court then adjourned the final hearing, and plaintiff filed an amended complaint, alleging seven more prior acts of domestic violence.[3]

The FRO hearing resumed on January 15, 2016, with plaintiff continuing her testimony regarding defendant's history of domestic violence against her. While plaintiff's complaint alleged defendant came to her apartment in July 2015, "trying to get in her door to fight her," she retreated from this allegation when she testified, "I was arguing, he talked, it was . . . an argument in a sense, ain't nothing physical happened that day."

---

[3]   Of note, the amended complaint did not list any July 2014 incidents, even though plaintiff's testimony regarding these incidents — not listed in plaintiff's initial complaint — represented the reason the court adjourned the initial FRO hearing.

Plaintiff testified about six other incidents of domestic violence by defendant; however, she demonstrated little command of the dates and times when these events occurred. Plaintiff described several incidents of stalking behavior during 2013, ultimately clarifying, "They all happened [during] the week of the 8th of [August] 2013."

On cross-examination, defendant attempted to confront plaintiff with documentation from her car dealer from August 14, 2013. This documentation would appear to undermine significant parts of plaintiff's testimony regarding acts of domestic violence defendant allegedly committed during the week of August 8, 2013. However, the court failed to allow defendant to question plaintiff regarding these documents, limiting him to questions only:

> [DEFENDANT]: I got copies of paperwork where [plaintiff] asked me to pick up her vehicle that was at the dealer[,] and this happened on August 14th. I have documents of that so she allegedly, I last talked about —
>
> THE COURT: No. Questions.
>
> [DEFENDANT]: Oh, she — oh, so this couldn't have happened. I got documents —
>
> THE COURT: Questions.
>
> [DEFENDANT]: The question I'm going to ask her.

[DEFENDANT]:    How did this happen if I have documents of me picking up her vehicle at her request from the dealer?

[PLAINTIFF]:    Are you asking me? No. Wherever you get the documents from, I don't know. You ain't picked up nothing.

[DEFENDANT]:    I got documents —

THE COURT:      Was there some point in all this of that year where he — you asked him to do something as far as your car is concerned?

[PLAINTIFF]:    No.

[DEFENDANT]:    I have documents, Your Honor.

THE COURT:      Questions.

[DEFENDANT]:    Like, oh, the next question?

THE COURT:      Yes.

[DEFENDANT]:    Okay, so you don't want the documents?

THE COURT:      Right now, it's cross — you're crossing —

[DEFENDANT]:    Okay.

THE COURT:      Listen to me, please. Right now this is your cross-examination of [plaintiff]. That involves you're asking her questions.

[DEFENDANT]:    Okay.

THE COURT:      Not producing documents, not testifying, asking questions.

6                                           A-2867-15T3

Defendant also indicated he had documents to challenge plaintiff's claim he sped away in a Volkswagen.[4] The judge again refused to allow defendant to use any documents to challenge plaintiff's testimony, stating, "Questions, [defendant]." Inexplicably, the judge did not have defendant's documents marked for identification and otherwise failed to explore the possible impact of the documents upon plaintiff's credibility.[5]

After plaintiff's testimony, three other persons testified: plaintiff's friend, the friend's adult son, and plaintiff's boyfriend; all claimed witnessing the alleged tire-slashing incident of November 5, 2015. The witnesses offered widely varying accounts of the time of the tire slashing, from 1 p.m. to midnight. All testified defendant fled in a Volkswagen.

Defendant then testified on his own behalf regarding the November 5, 2015 incident.

> I have no clue what happened on November 5th alleging her car. I was in — at home and on

---

[4]   The document defendant referenced was a car dealer buyer's order showing defendant's girlfriend, who owned a Volkswagen that defendant sometimes used, traded in her Volkswagen for a Jeep in January 2015, almost ten months before the tire slashing incident.

[5]   A court should generally mark all exhibits referenced at trial, even those not introduced in evidence. See R. 1:2-3; Manata v. Pereira, 436 N.J. Super. 330, 336 (App. Div. 2014); N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002) (stating that the failure to properly identify documents "not only violate[s] basic rules of trial practice . . . but inhibit[s] the appellate process").

the phone with a friend of mines [sic] until the time my son arrived home from karate class. And I have evidence to prove my location based on cell phone records from the cell phone company and documentation that my son was in karate class from the time that she's alleging that I was in her house.

The court then asked, "What documentation do you have that proves where you were?" Defendant replied, "Cell phone records with the locations." The court then viewed the documents and asked questions about them. The record contains no indication the court reviewed defendant's documentation regarding his son's karate class schedule.

Regarding the November 5th incident, the court found defendant's cell records only account for a period of approximately half an hour, and while the witnesses' accounts differed on the exact time, they were all "consistent in terms of what they saw." The court found defendant went to plaintiff's home and punctured her tire in the late afternoon or evening of November 5. The judge also credited plaintiff's testimony in finding defendant committed three prior acts of domestic violence involving harassment and stalking in 2013, 2014, and 2015. Based on these findings, the judge found plaintiff in need of an FRO and issued the order under review. This appeal followed.

A-2867-15T3

The permissible scope of cross-examination is an issue within the trial court's discretion. <u>Persley v. N.J. Transit Bus Operations</u>, 357 <u>N.J. Super.</u> 1, 9 (App. Div.), <u>certif. denied</u>, 177 <u>N.J.</u> 490 (2003). Ordinarily, we will not interfere with a trial court's decision regarding the scope of cross-examination "unless there is a clear abuse of discretion which has deprived a party of a fair trial." <u>Ibid.</u> However, "[t]o the extent defendant's argument . . . raises a question of law, . . . our review is de novo and plenary." <u>State v. J.D.</u>, 211 <u>N.J.</u> 344, 354 (2012).

As recognized by our Supreme Court, cross-examination represents "the 'greatest legal engine ever invented for the discovery of truth.'" <u>State v. Castagna</u>, 187 <u>N.J.</u> 293, 309 (2006) (quoting <u>California v. Green</u>, 399 <u>U.S.</u> 149, 158, 90 <u>S. Ct.</u> 1930, 1935, 26 <u>L. Ed.</u> 2d 489, 497 (1970)). In the present case, the court ruled, without explanation, that defendant could only ask questions, and precluded him from confronting plaintiff with documentary evidence that would appear to challenge significant parts of her direct testimony. We can discern no basis for the court's decision to restrict cross-examination in this manner, nor do we find the court properly addressed the documentary evidence identified by defendant.

Although we usually "accord deference to family court factfinding," <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 413 (1998), our review of the record in the present matter has convinced us that defendant has raised valid issues regarding the fairness of the proceedings and the sufficiency of the evidence to support the court's findings. Because we conclude the manner in which the trial was conducted resulted in a miscarriage of justice, we reverse and remand for a new trial.

Our Supreme Court previously emphasized the importance of the due process rights of litigants in domestic violence proceedings:

> Many litigants who come before our courts in domestic violence proceedings are unrepresented by counsel; many are unfamiliar with the courts and with their rights. Sifting through their testimony requires a high degree of patience and care. The pressures of heavy calendars and volatile proceedings may impede the court's willingness to afford much leeway to a party whose testimony may seem disjointed or irrelevant. But the rights of the parties to a full and fair hearing are paramount.
>
> [<u>J.D. v. M.D.F.</u>, 207 <u>N.J.</u> 458, 481, (2011).]

We have noted, "[P]ro se litigants are not entitled to greater rights than litigants who are represented by counsel." <u>Ridge at Back Brook, LLC v. Klenert</u>, 437 <u>N.J. Super.</u> 90, 99 (App. Div. 2014).

> But we also recognized in <u>Rubin</u> — in concluding that a self-represented litigant was deprived of a meaningful opportunity to

be heard due to a lack of understanding of motion practice — that it is "fundamental that the court system . . . protect the procedural rights of all litigants and to accord procedural due process to all litigants."

[Ibid. (quoting Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982)).]

We vacate the FRO and remand for a new FRO hearing, to be conducted on an expedited basis no later than September 29, 2017. Because the FRO judge made credibility findings, we direct that a different judge conduct the FRO proceeding on remand. Pending the scheduling and completion of the remand hearing, we reinstate the previously issued TRO. We do not retain jurisdiction.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2867-15T3