# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2841-23

C.B.,

    Plaintiff-Respondent,

v.

S.W.,

    Defendant-Appellant.

_____

Submitted May 13, 2025 – Decided May 27, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Chancey Division, Family Part, Morris County, FV-14-0390-24.

Karl A. Fenske, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

Defendant S.W. appeals from a final restraining order (FRO) entered against her pursuant to the Prevention of Domestic Violence Act (PDVA),

N.J.S.A. 2C:25-17 to -35, and an order granting attorney's fees to plaintiff as compensatory damages pursuant to N.J.S.A. 2C:25-29(b)(4).[1]  We affirm.

## I.

We glean the salient facts from the record before the trial court.  Plaintiff and defendant were long-time female friends who began living with Paul Wehn, an unrelated male, in 2020.  In approximately March 2023, Wehn decided he needed additional space in his house for his son, daughter-in-law, and newborn grandchild to visit, hoping that "the house would become more of a family center."  Wehn asked only plaintiff to vacate, giving her until the end of March 2024 to find another place to live—while defendant was permitted to stay.  After Wehn advised the parties of his decision, discord between plaintiff and defendant ensued.

On October 5, 2023, plaintiff and defendant had an altercation in the kitchen of the home which led to the entry of a temporary restraining order (TRO) in favor of plaintiff.  There was no previous history of domestic violence.

After the TRO was entered, a FRO was entered by default based on defendant's failure to appear at trial.  Defendant successfully moved to vacate the default FRO and a one-day trial was held on March 13, 2024, where the court

---

[1]  Respondent did not file a brief.

heard testimony from plaintiff, defendant, Wehn, Amelia Peralta, Chatham Police Officer Brian McGrath, among other witnesses.

On the morning of the incident that led to the TRO, plaintiff was in the kitchen when she received a call on her cell phone from her doctor's office. As soon as plaintiff answered the call, defendant turned on the blender, causing it to be difficult for plaintiff to hear. Plaintiff asked defendant if she could "please turn off the blender" and when defendant replied she should take her phone call somewhere else, plaintiff unplugged the blender.

Defendant then went into a drawer, pulled out a knife and held it against plaintiff's throat. Amelia Peralta, the doctor's office receptionist who was still on the phone, heard plaintiff say: "[o]h my God. My house mate just pulled a knife on me." Plaintiff testified she was so afraid, she dropped the phone on the floor and, while defendant continued to hold the knife in her hand, said: "[y]ou just pulled a knife on me. Did you just pull a knife on me?" to which defendant responded "[o]h, I'm protecting myself." Plaintiff then asked, "protecting yourself from what? I just pulled the blender out [of] the . . . socket. I didn't do anything to you . . . ."

A-2841-23

Plaintiff testified she is "afraid for her life," and needs a restraining order to protect her from defendant. Plaintiff also asserted defendant previously told Wehn she would pour acid on plaintiff if "she sees [her] again."

Defendant testified plaintiff became antagonistic towards her after Wehn told plaintiff she had to move out, threatening her multiple times. Plaintiff also became verbally abusive to Wehn. Defendant denied holding a knife to plaintiff's neck, insisting she merely used a knife to cut fruit, washed it and put it away, even before plaintiff received the call. Defendant testified plaintiff put the call on speaker and she heard the caller merely say, "I'm going to go now." Defendant testified plaintiff unplugged the blender while she was trying to make juice, without first asking her to stop. She testified it was plaintiff who was "in her personal space" and scared her. Even though she was afraid of plaintiff, defendant testified she remained in the kitchen with her.

Peralta, the doctor's office receptionist, testified that when she first called plaintiff, she heard screaming after plaintiff answered the phone. After their call was disconnected, Peralta called plaintiff back to make sure she was safe.

Officer McGrath testified to his interaction with plaintiff when she appeared at headquarters to report the incident. During his cross-examination,

4

McGrath read defendant's statement from the police report into the record without objection, as follows:

> [Defendant] stated she was cutting up food in the kitchen and using a blender when [plaintiff] entered the residence. She stated [plaintiff] was talking on the phone and got upset when the kitchen area was too loud for her to hear her conversation. A verbal argument ensued and [plaintiff] unplugged the blender. [Defendant] further stated [plaintiff] "got in her face . . ." and [defendant] placed the knife she was holding onto the kitchen counter and pushed herself away from [plaintiff]. According to [defendant], [plaintiff] left the residence.

Defendant had not lived at the house since her arrest, because the TRO precluded her from doing so, but she visited the house without a police escort twice since the TRO was entered.

Notwithstanding the TRO compelling defendant to leave, Wehn told plaintiff that she still had to move. Wehn did not see plaintiff at the premises after January 21 and confirmed to her by text message he would be changing the locks on February 1.

Wehn entered plaintiff's room on January 24, and saw it had been completely emptied, with the furniture that he had purchased removed. Wehn then noticed defendant's room had been ransacked. Although defendant was allegedly homeless and living out of her car before she began living with Wehn,

5

she claimed an exorbitant amount of high-end jewelry, gold bars, clothing, and other expensive items were stolen out of her room by plaintiff. Neither defendant nor Wehn reported the alleged theft to the police until approximately two weeks later.

At the conclusion of the trial testimony, the trial court addressed evidential issues. Among other things, the trial court denied defendant's application to move the police report into evidence under the business record exception to hearsay since McGrath was not asked any authentication or foundational questions.

After considering the trial record, the trial court found plaintiff's testimony was more consistent and "sure-footed" than defendant's, considering their demeanor on the witness stand. The trial court found plaintiff's testimony consistent with her statements to the police but found defendant's testimony was nebulous and left doubt as to its accuracy. The court found Wehn had a motive to testify in a manner that was not favorable to plaintiff because he wanted her to leave his home. Considering the corroborating testimony from the receptionist, the court found plaintiff's version of events more credible.

After concluding defendant's actions constituted assault under N.J.S.A. 2C:12-1, the trial court concluded there was a need for a FRO going forward.

A-2841-23

The FRO stated the trial court found both Silver prongs were met and defendant may move back into Wehn's home since plaintiff moved out. A second order was entered awarding plaintiff $6,000 in counsel fees as compensatory damages pursuant to N.J.S.A. 2C:25-29(b)(4), with an accompanying written statement of reasons.

This appeal followed, with defendant arguing the trial court made procedural errors, improperly prohibiting defendant from moving the police report into evidence or allowing counsel to cross-examine with the report. Defendant also posits the trial court's factual findings are not borne out by the record and there was no determination plaintiff was in need of protection from the defendant as required under the second Silver prong. Defendant also alleges opposition to plaintiff's motion for attorney's fees was submitted the day before the court's ruling but was not considered by the court. We analyze defendant's arguments in turn.

II.

A.

Our limited scope of review in domestic violence cases is well established. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic

violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

Deference is particularly warranted where "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

Rulings as to the admissibility of evidence or testimony are also governed by an abuse of discretion standard. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). Therefore, we "review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). The de novo standard of review only

governs where the trial court applies the incorrect legal standard to decide an evidential objection. Hassan v. Williams, 467 N.J. Super. 190, 214 (App. Div. 2021); see also Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

B.

When determining whether to grant a FRO pursuant to the PDVA, a trial court must make two determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the [court] must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Assault is one of the predicate acts included in N.J.S.A. 2C:25-19(a). See N.J.S.A. 2C:25-19(a)(2). A person is guilty of assault if the person, "[a]ttempts to cause or purposely, knowingly[,] or recklessly causes bodily injury to another . . . ." N.J.S.A. 2C:12-1(a)(1). "'Bodily injury' is defined as 'physical pain, illness or any impairment of physical condition.'" State in the Int. of S.B., 333 N.J. Super. 236, 242 (App. Div. 2000) (quoting N.J.S.A. 2C:11-1(a)). "'Even the slightest physical contact, if done intentionally, is considered a simple assault under New Jersey law.'" N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997) (quoting State v. Bazin, 912 F. Supp. 106, 115 (D.N.J. 1995)).

9

If the court finds the defendant committed a predicate act of domestic violence, the court must then determine whether it "should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 126. "When the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue [a] FRO 'is most often perfunctory and self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 416 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127). However, in all cases, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in [N.J.S.A. 2C:25-29(a)(1)] to . . . (6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. The statutory factors include but are not limited to: "[t]he previous history of domestic violence between the [parties], including threats, harassment and physical abuse;" "[t]he existence of immediate danger to person or property;" and "[t]he best interests of the victim and any child." N.J.S.A. 2C:25-29(a)(1), (2), (4).

Here, the trial court made factual findings underpinning its decision that plaintiff established assault as a predicate act by the preponderance of the credible evidence. The trial court found plaintiff's testimony as to defendant's threat with a knife credible and that it sufficiently established assault under the

governing statute. We decline to disturb the trial court's credibility findings, since they are grounded in substantial testimony in the record.

The trial court also found there was a need for a FRO based on plaintiff's credible testimony. In addition to the self-evident need for a restraining order based on the violent nature of the predicate act of assault involving a knife, plaintiff's testimony that she feared for her safety coupled with defendant's subsequent threats to cause her physical harm if they further crossed paths was an appropriate predicate for the trial court's conclusion under the second Silver prong. Silver, 387 N.J. Super. at 127 (finding that when the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO "is most often perfunctory and self-evident").

Thus, we affirm.

C.

We are unconvinced the trial court erred in denying defendant's request to move the police report regarding the October 5 incident into evidence.

A police report is generally "admissible as a record of a regularly conducted activity, commonly known as a business record, N.J.R.E. 803(c)(6) . . . ." Manata v. Pereira, 436 N.J. Super. 330, 345 (App. Div. 2014). Such reports may be admissible to show, for example, a person spoke to an officer. Ibid.

However, the Court has held a police report containing "factual statements, observations, and the officer's opinions" constituted "inadmissible hearsay outside the scope of the business records exception." State v. Kuropchak, 221 N.J. 368, 388-89 (2015); see also State v. Mosley, 232 N.J. 169, 191 (2018) ("A police report . . . prepared in the context of an investigation and recounting subjective events in a narrative form, is not a document that fits into any exception to the hearsay rule.").

Nevertheless, where the business record at issue is a police report, "[i]f the police officer who wrote the report is unavailable, any other police official who could state that the report was a record made in the regular course of the officer's duties and was made at or near the time of the event may establish the report's admissibility." Dalton v. Barone, 310 N.J. Super. 375, 378 (App. Div. 1998). The declarant who records the information in the report must have had a "'business' duty to communicate it truthfully." State v. Lungsford, 167 N.J. Super. 296, 309 (App. Div. 1979).

Defendant made no showing the required foundation was laid for the police report to be admissible as a business record under the hearsay exception set forth in N.J.R.E. 803(c)(3). Thus, we find no abuse of discretion by the trial court in determining the police report, other than the portions testified to at trial

without objection, were inadmissible.  For purposes of completeness, we note defendant has also failed to show there was an attempt to cross-examine a witness based on the report which was improperly precluded by the trial court.

D.

We discern no error with the trial court's conclusion that N.J.S.A. 2C:25-29 does not require consideration of the financial circumstances of the parties when granting attorneys' fees as compensatory damages in domestic violence cases.  Defendant's argument is unpersuasive, as the relevant statutory provision and accompanying decisional law are clear that the trial court's grant of compensatory damages is entirely discretionary, and the trial court is not obligated to consider the financial circumstances of the parties when making its determination.

A damage award of attorneys' fees in a domestic violence action rests within the discretion of the trial judge.  McGowan v. O'Rourke, 391 N.J. Super. 502, 507-08 (App. Div. 2007).  The award for compensatory damages under the PDVA is governed by N.J.S.A. 2C:25-29(b)(4), which states in pertinent part:

> At the hearing the judge of the Family Part of the Chancery Division of the Superior Court may issue an order granting any or all of the following relief:
>
> . . . .

(4) An order requiring the defendant to pay to the victim monetary compensation for losses suffered as a direct result of the act of domestic violence . . . . <u>Compensatory losses shall include, but not be limited to</u>, loss of earnings or other support, including child or spousal support, out-of-pocket losses for injuries sustained, cost of repair or replacement of real or personal property damaged or destroyed or taken by the defendant, cost of replacing locks[,] . . . cost of counseling for the victim, moving or other travel expenses, <u>reasonable attorney's fees, court costs</u>, and compensation for pain and suffering. Where appropriate, punitive damages may be awarded in addition to compensatory damages.

[(Emphasis added).]

This provision serves a critical public policy goal: "to avoid a chilling effect on the willingness of domestic violence victims to come forward with their complaints." <u>M.W. v. R.L.</u>, 286 N.J. Super. 408, 411 (App. Div. 1995).

Because fees and costs in a domestic violence action are awarded as damages, an award is "not subject to the traditional analysis" for an award of fees in family-type claims pursuant to N.J.S.A. 2A:34-23, and the <u>court is not obliged to consider the parties' financial circumstances</u>. <u>McGowan</u>, 391 N.J. Super. at 507 (quoting <u>Schmidt v. Schmidt</u>, 262 N.J. Super. 451, 453 (Ch. Div. 1992) (emphasis added)). Defendant's argument that the trial court erroneously stated plaintiff's attorney fee application was unopposed, is not supported by evidence that substantive opposition was filed.

14

To the extent we have not addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2841-23